Filed 8/14/26  Zhao v. Sun CA4/1

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| QIAN ZHAO, | D087438 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. CIVSB2409485) |
| XIAOFAN SUN et al., | ORDER MODIFYING OPINION AND DENYING REHEARING |
| Defendants and Appellants. | |
| | NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed on July 22, 2026, be modified as follows:

1.  In the first sentence of the last paragraph on page 9, (i) "regarding his ability to verify English declarations" is deleted; (ii) an ellipsis is inserted after "to impeach;" and (iii) "with respect to the declaration(s) he has submitted to the Court in this action" is inserted after "Zhao's credibility"; such that the sentence reads:

> Wang claims she submitted the Fugitive Status Notice "to impeach . . . Zhao's credibility with respect to the declaration(s) he has submitted to the Court in this action."

2. In the last paragraph of page 9 and continued onto page 10, "As to Wang's conclusory and undeveloped claim that the Fugitive Status Notice was relevant to show Zhao 'was unable to submit a current declaration in the Ex Parte Application filed on May 9, 2024,' we agree with Zhao that she failed to establish that his alleged fugitive status had any 'bearing on [the] preliminary injunction hearing.'" is inserted after "do[es] not speak English."; such that the sentence reads:

> As to Wang's conclusory and undeveloped claim that the Fugitive Status Notice was relevant to show Zhao "was unable to submit a current declaration in the Ex Parte Application filed on May 9, 2024," we agree with Zhao that she failed to establish that his alleged fugitive status had any "bearing on [the] preliminary injunction hearing."

There is no change in the judgment.

The petition for rehearing is denied.

DO, Acting P. J.

Copies to: All parties

2

Filed 7/22/26  Zhao v. Sun CA4/1 (unmodified opinion)
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| QIAN ZHAO, | D087438 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. CIVSB2409485) |
| XIAOFAN SUN et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of San Bernardino County, Wilfred J. Schneider, Jr., Judge.  Affirmed in part, reversed in part, and remanded with directions.

Kingswood Law and Jing Wang for Defendants and Appellants.

Skywheel Law and Virginia Liu for Plaintiff and Respondent.

A dispute between Plaintiff Qian Zhao and Defendant Xiaofan Sun over money Zhao deposited into accounts allegedly controlled by Sun eventually grew to encompass Sun's counsel in this action, Jing Wang and Kingswood Law, PC.  As relevant for this appeal, after Wang filed a document and declaration accusing Zhao of being a criminal fugitive subject to an arrest warrant in China, Zhao amended his complaint to assert claims against

Wang for false light, libel per se, and declaratory relief. Zhao also accused Wang of receiving and helping Sun misuse funds allegedly belonging to Zhao.

Wang accused Zhao of initiating a strategic lawsuit against public participation (SLAPP) against her, so she moved to strike the claims arising from her protected petition or speech. The trial court denied Wang's anti-SLAPP motion.

Based on Wang's dual role as an advocate and a witness, Zhao successfully moved to disqualify Wang and Kingswood Law from representing Sun in this action.

Wang appeals the denial of her anti-SLAPP motion and the disqualification order.

On the anti-SLAPP motion, Wang identified protected activity—filing her declaration and a fugitive status notice—that is the basis for some of Zhao's claims against her. Although Zhao claims those filings were illegal, and thus cannot constitute protected activity, he falls short of his burden to prove criminal conduct as a matter of law because he offers no evidence that Wang knew those filings were false. Of the claims related to those filings, Wang challenges only the falsity element for false light and libel per se, so we limit our discussion accordingly. Zhao has presented evidence that the statements about him being a criminal fugitive subject to an arrest warrant are false, including evidence that he has been able to travel freely within and outside of China since the time Wang claims he escaped from criminal custody. Wang contends the litigation privilege bars Zhao's claims as a matter of law, but the tenuous basis she offers for the filings' relevancy does not convince us the privilege applies here. As a result, Zhao has satisfied his burden to show a probability of success, so we affirm the order denying Wang's anti-SLAPP motion.

On the disqualification order, because Wang will likely be called as a witness, which carries risk of confusing the jury, the court did not abuse its discretion in disqualifying her. But the court abused its discretion by extending the scope of Wang's disqualification to all phases of litigation without explanation. Accordingly, we reverse the order to the extent it precludes Wang from representing Sun in all pretrial activities and remand with directions to modify the scope of the disqualification order to provide that Wang is disqualified from representing Sun at trial and during any other pretrial activities that the court determines pose a risk of revealing Wang's dual role to the jury. In addition, we reverse the disqualification of Kingswood Law, as Wang's dual role is not by itself a basis to disqualify the entire firm. In all other respects, we affirm the disqualification order.

I.

A.

According to the operative complaint, Zhao, a resident of China, arranged a foreign currency transaction with Sun, a California resident. Sun allegedly opened an irrevocable trust into which Zhao transferred $3 million. Sun, however, did not complete the exchange process. Zhao alleges that Sun—without his knowledge or consent—used money from the trust to purchase real property that Sun later transferred to herself as the sole owner. He claims Sun withdrew other monies from the trust without his knowledge or consent, including transferring $250,524.29 to Wang, who in turn allegedly used those funds to purchase another property.

After suing Sun, Zhao moved to stop Sun from transferring any more funds from the trust account. Seemingly in response, on June 5, 2024, Wang filed a notice of lodging of a document she claimed came from China's National Fugitive Information System "regarding the fugitive status" of Zhao

3

in China, which we will refer to as the Fugitive Status Notice. In her accompanying declaration, Wang attested that she searched for "any evidence that Qian Zhao had ever been involved in the exchange of [Chinese] currency for U.S. dollars," during which time she "came upon" the Fugitive Status Notice. Wang attested that the document indicates Zhao "was suspected of committing the crime of exchanging [Chinese currency] for U.S. dollars; that he had escaped from Criminal Detention in China on May 8, 2024; and that an Arrest Warrant has been issued." The translated copy of the Fugitive Status Notice states that Zhao "is suspected of committing the crime" and "absconded," with May 8 listed as the "Date of Escape." In addition, the Fugitive Status Notice says one can "Click to View" an arrest warrant.

Zhao later amended his complaint to add Wang and Kingswood Law as defendants and to assert against them causes of action for quiet title, aiding and abetting breach of fiduciary duty, conversion, conspiracy to commit conversion, aiding and abetting conversion, conspiracy to commit fraud, aiding and abetting fraud, false light, libel per se, declaratory relief, and civil theft. The claims against Wang for false light, libel per se, and declaratory relief arose from her filing of the Fugitive Status Notice and the related declaration.

B.

Wang then filed an anti-SLAPP motion to strike Zhao's claims that "arise solely from protected petition or speech in connection with Defendant Wang's legal representation of Defendant Xiaofan Sun in this action."

The trial court denied Wang's motion because "although she has demonstrated the filing of her declaration and lodging [of] evidence are protected conduct at issue under the 12th-14th causes of action, Plaintiff Zhao has demonstrated a probability of prevailing on those causes of action."

4

## C.

Zhao moved to disqualify Wang and Kingswood Law from representing Sun in this action. One ground for disqualification Zhao advanced was under the advocate-witness rule of California Rules of Professional Conduct Rule 3.7 based on Wang's testimony being "essential to establish material issues and key facts in this litigation."

The trial court granted the motion and disqualified Wang and Kingswood Law from representing Sun "due to the prejudicial concern of [Wang] representing Sun while being a likely witness in this litigation arising from her and her law firm being named Defendants in this litigation."

## II.

## A.

Wang challenges the denial of her anti-SLAPP motion. We affirm.

The anti-SLAPP statute seeks to cut short "lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition." (Code Civ. Proc., § 425.16(a).) It "provides a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384.)

An anti-SLAPP motion involves a two-step process. "At the first step, the moving defendant bears the burden of identifying all allegations of protected activity[] and the claims for relief supported by them." (*Baral*, 1 Cal.5th at p. 396.) If the defendant satisfies that burden, then at the second step "the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated." (*Ibid.*)

We review de novo the denial of an anti-SLAPP motion. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067.) Even

5

so, "[w]e presume the superior court's order is correct, and the appellant must affirmatively show error." (*Billauer v. Escobar-Eck* (2023) 88 Cal.App.5th 953, 969.)

### 1.

At the first step, Wang argues all allegations against her in the operative complaint "arise, or stem, from the pleadings [she] filed . . . on behalf of Sun." Zhao contends Wang failed to perform a necessary "claim-by-claim analysis" and her litigation-related activity was illegal and thus not protected under the anti-SLAPP statute. We conclude (a) Wang satisfied her step-one burden only as to the claims arising from her filing of the Fugitive Status Notice and her related declaration and (b) Zhao has not convinced us the rare illegality exception applies here.

### a.

At step one, the moving party must establish that the challenged allegations or claims arise from protected activity, which includes "any written or oral statement made before a . . . judicial proceeding." (§ 425.16(e).) "If a cause of action contains multiple claims and a moving party fails to identify how the speech or conduct underlying some of those claims is protected activity, it will not carry its first-step burden as to those claims." (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1011.)

Here, Wang seeks to strike all causes of action against her. Yet the only specific conduct Wang identifies and discusses in the opening brief as protected activity under step one is her filing of (1) the Fugitive Status Notice and (2) her accompanying declaration. Those court filings are protected activity for anti-SLAPP purposes absent any applicable exception. (§ 425.16(e).) As the trial court found, the only causes of action that seek to hold Wang liable for that conduct are the 12th (false light), 13th (libel per se),

6

and 14th (declaratory relief).  We agree.  Although for the first time in reply Wang argues the gravamen of the other causes of action against her are also protected activity because they stem from her legal representation of Sun, that argument is forfeited as untimely.  (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 482, fn. 10.)  Consequently, Wang has not met her step-one burden as to any other allegations or causes of action against her aside from the 12th through 14th.

b.

Zhao contends that even Wang's filing of the Fugitive Status Notice and her related declaration "fall outside anti-SLAPP protection" because the filings were illegal activity.  We disagree.

Anti-SLAPP protection "cannot be invoked by a defendant whose assertedly protected activity is illegal as a matter of law and, for that reason, not protected by constitutional guarantees of free speech and petition." (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 317.)  In this context, "illegal" refers to criminal conduct.  (*Aron v. WIB Holdings* (2018) 21 Cal.App.5th 1069, 1083.)  This illegality exception applies only in "rare cases in which there is uncontroverted and uncontested evidence that establishes the crime as a matter of law."  (*Cross v. Cooper* (2011) 197 Cal.App.4th 357, 386.)  "[T]he plaintiff bears the burden of conclusively proving the illegal conduct."  (*Id.* at p. 385.)

According to Zhao, Wang "committed an illegal activity when she filed a falsified" Fugitive Status Notice.  Elsewhere, Zhao claims Wang's related declaration "constitutes perjury."  Perjury, however, is a specific intent crime. (*People v. Post* (2001) 94 Cal.App.4th 467, 481.)  It requires the accused to possess knowledge of falsity.  (Pen. Code, § 118(a).)  Despite claiming Wang "knowingly submitted falsified records," Zhao identifies no supporting

7

evidence of Wang's knowledge.  As a result, he has not persuaded us the narrow illegality exception applies here, so we will proceed to step two of the anti-SLAPP analysis.

Given our resolution of step one, we do not need to reach the parties other step-one arguments.

2.

At step two, the plaintiff must show a "probability of success."  (*Collins v. Waters* (2023) 92 Cal.App.5th 70, 80.)  In this "summary-judgment-like process," we "do not weigh evidence or resolve conflicting factual claims." (*Ibid.*)  Instead, we accept the plaintiff's evidence as true and assess if the plaintiff has stated a legally sufficient claim and "made a prima facie evidentiary showing sufficient to sustain a favorable judgment." (*Ibid.*)  We evaluate the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law.  (*Ibid.*)  An anti-SLAPP motion fails so long as the claims have "even minimal merit."  (*Ibid.*)

a.

Wang argues the litigation privilege bars Zhao's claims against her. Zhao responds that Wang has failed to meet her burden to establish the litigation privilege protects Wang's filing of the Fugitive Status Notice and her related declaration because they "had no logical connection or relation to the litigation."  (Underlining and some capitalization omitted.)  Wang has not persuaded us the litigation privilege applies here.

The litigation privilege under Civil Code section 47 gives litigants and witnesses "the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions."  (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 213.)  It "promotes the effectiveness of

8

judicial proceedings by encouraging open channels of communication and the presentation of evidence in judicial proceedings." (*Ibid.* [cleaned up].)

This privilege "applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." (*Silberg*, 50 Cal.3d at p. 212.) The last two requirements often collapse into one, as "[t]he requirement that the communication be in furtherance of the objects of the litigation is, in essence, simply part of the requirement that the communication be connected with, or have some logical relation to, the action, i.e., that it not be extraneous to the action." (*Id.* at pp. 219-220.) Thus, "a statement made in a judicial proceeding is not privileged unless it has some reasonable relevancy to the subject matter of the action." (*Id.* at p. 220.)

At step two of an anti-SLAPP analysis, "a defendant bears the burden of proving a privilege's applicability." (*Neurelis, Inc. v. Aquestive Therapeutics, Inc.* (2021) 71 Cal.App.5th 769, 794.)

At issue here is whether Wang's declaration and the Fugitive Status Notice had some reasonable relevancy to the action. The trial court acknowledged that "all implication is the litigation privilege would apply" but ultimately determined those filings were "irrelevant to this litigation," so it did not.

Wang claims she submitted the Fugitive Status Notice "to impeach Zhao's credibility regarding his ability to verify English declarations." Although she contends, without any supporting legal authority, that attacking a party's credibility is "never 'extraneous' to a judicial proceeding," Wang fails to explain how Zhao's purported fugitive status in China relates to his ability to verify English declarations. The relevancy of the Fugitive

9

Status Notice for this purpose seems particularly tenuous given Wang acknowledges that Zhao had already attested that he "do[es] not speak English." Thus, Wang has fallen short of her burden to prove the at-issue filings were reasonably relevant to the action for the litigation privilege to apply. And as a result, we do not need to reach the parties' other arguments about the litigation privilege.

b.

As to Zhao's probability of success, besides asserting the litigation privilege, in her opening brief Wang challenges only the falsity element of the 12th (false light) and 13th (libel per se) causes of action. Her belated claim in reply that Zhao also "failed to provide clear and convincing evidence of actual malice" is forfeited as untimely. (*Garcia*, 16 Cal.4th at p. 482, fn. 10.) On appeal, because we assume the trial court's order is correct, "the appellant must affirmatively show error." (*Billauer*, 88 Cal.App.5th at p. 969.) Accordingly, we consider only if Zhao has met his burden to show the falsity of the Fugitive Status Notice and Wang's related declaration for his false light and libel per se claims to survive the anti-SLAPP motion. We conclude he has.

Libel is defamation based on written or other fixed representation. (Civ. Code, §§ 44, 45.) Zhao's false light claim arises from the same facts as his libel per se defamation claim. As a result, the false light claim "stands or falls" with the libel defamation claim. (*Eisenberg v. Alameda Newspapers, Inc.* (1999) 74 Cal.App.4th 1359, 1385, fn. 13.) "A viable defamation claim requires the existence of a provable falsehood." (*Hawran v. Hixson* (2012) 209 Cal.App.4th 256, 289.)

In her declaration, Wang attested that Zhao "escaped from Criminal Detention in China on May 8, 2024; and that an Arrest Warrant has been

10

issued." She also submitted the Fugitive Status Notice, which states that Zhao "is suspected of committing the crime" and "absconded," with May 8 listed as the "Date of Escape." And the Fugitive Status Notice identifies an "Arrest Warrant Level."

To prove the falsity of these statements, Zhao submitted a certificate of noncriminal record stating that he "has no criminal records" in China between early 1987 through June 7, 2024, after his purported May 2024 escape from criminal detention and the issuance of an arrest warrant. Zhao's attorney attested, without objection, that a Chinese police officer confirmed that if Zhao were a fugitive, "his arrest warrant would show up on the National Fugitive Information System right away" and would alert authorities to arrest Zhao if he took "any public transportation, railway, [or] airplane" in China or tried to leave China. Zhao attested and provided some flight information showing that he (1) took a domestic flight from Beijing to another city in China on June 8 and (2) flew from Beijing to Thailand on June 10. Although the exhibits to Zhao's declaration do not include his return flight from Thailand, his declaration indicates he was back in Beijing by June 13. Zhao points to the certificate of his "clean criminal record from the Chinese authorities" and his ability to "travel internationally without issue" as "facts that conclusively demonstrate the falsity of Wang's claims."

Wang addresses only the certificate of noncriminal record. She denounces the document as "non-certified, therefore inadmissible," but that parenthetical point is arguably forfeited as underdeveloped given the lack of supporting argument or legal authority. (*In re Champion* (2014) 58 Cal.4th 965, 986.) Wang also quibbles about the differences between "criminal record" and "fugitive record" and "convictions" and "warrants" to argue the certificate fails to disprove Zhao was a fleeing suspect.

11

Even without the certificate of noncriminal record, however, Zhao has made a prima facie evidentiary showing of falsity. He has presented evidence about his travels and the consequences were he a fugitive subject to an arrest warrant sufficient to indicate he is not "truly a fugitive as Wang claims." Thus, for purposes of our anti-SLAPP analysis, Zhao has shown the requisite probability of success.

As a result, we affirm the denial of Wang's anti-SLAPP motion.

## B.

## 1.

## a.

Wang contends the trial court erred in disqualifying her from representing Sun in this action under the advocate-witness rule. We disagree.

A trial court may disqualify a lawyer under its inherent power to control the conduct of those connected with a judicial proceeding "in furtherance of justice." (Code Civ. Proc., § 128(a)(5).) "The paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar." (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1145.) As a result, "[t]he important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process." (*Ibid.*)

Rule 3.7(a) of the California Rules of Professional Conduct, the advocate-witness rule, precludes a lawyer from acting "as an advocate in a trial in which the lawyer is likely to be a witness" unless, as relevant here, the lawyer has obtained the client's "informed written consent."

12

The informed-consent exception "is not absolute." (*Doe v. Yim* (2020) 55 Cal.App.5th 573, 581.) Even if a client gives informed written consent, the court may still disqualify a lawyer "who seeks to both testify and serve as an advocate[] to protect the trier of fact from being misled or the opposing party from being prejudiced." (Rules Prof. Conduct, rule 3.7, com. 3, citing *Lyle v. Superior Court* (1981) 122 Cal.App.3d 470.) To do so requires "a convincing demonstration of detriment to the opponent or injury to the integrity of the judicial process." (*Lyle*, at p. 482.)

In deciding whether to disqualify a lawyer under the advocate-witness rule, a court "must consider: (1) whether counsel's testimony is, in fact, genuinely needed; (2) the possibility opposing counsel is using the motion to disqualify for purely tactical reasons; and (3) the combined effects of the strong interest parties have in representation by counsel of their choice, and in avoiding the duplicate expense and time-consuming effort involved in replacing counsel already familiar with the case." (*Yim*, 55 Cal.App.5th at p. 583 [cleaned up].) "California courts have agreed that one purpose of the advocate-witness rule is to prevent fact finder confusion regarding whether an advocate-witness's statement is to be considered proof or argument." (*Id.* at p. 582.) Another is to avoid the "risk of the jurors' tying counsel's persuasiveness as an advocate to [counsel's] credibility as a witness." (*Ibid.* [cleaned up].)

We review a disqualification motion for abuse of discretion. (*SpeeDee*, 20 Cal.4th at p. 1143.) We assess disputed factual issues for substantial evidence. (*Id.* at p. 1144.) To the extent no material factual issues are disputed, we review the trial court's determination as a question of law. (*Ibid.*)

13

Here, the trial court found Wang—"as an individual and agent of Kingswood" Law, both parties to the action—"would necessarily be a witness in this case." The court recognized Sun's right to be represented by Wang, counsel of her choice, and that Sun "may incur a burden in obtaining new counsel." Even so, the court determined that "the prejudice to the system outweighs" Sun's consent because the jury "could be confused" to hear Wang testify in her own defense and then "turn[] around" and argue on Sun's behalf for related allegations. The jury might also "assume [Wang's] argument is evidence since she was also a witness subject to testifying about her personal knowledge."

Wang claims the trial court "failed to consider and apply the findings and holdings in *Lopez v. Lopez* (2022) 81 Cal[.]App[.]5th 412." We agree with Zhao that *Lopez* is distinguishable as to whether the advocate-witness rule warranted disqualifying Wang, subject to our later discussion about the order's scope. *Lopez* concluded the trial court abused its discretion because it "failed to apply Rule 3.7's informed-consent exception" by not (1) even citing to Rule 3.7 at all, (2) finding disqualification was necessary despite the client's written consent, and (3) making any finding of, among other things, "potential confusion." (*Lopez*, 81 Cal.App.5th at pp. 424-425.) In contrast, as described above, the trial court here engaged in the very analysis the *Lopez* trial court failed to undertake.

Wang disclaims any desire to testify and contends any topics on which she would testify are "not germane" to this action, "notwithstanding the allegations" in the operative complaint. Substantial evidence supports the trial court's contrary finding. Among other things, the operative complaint accuses Wang and her firm of converting Zhao's funds, including through Wang's alleged receipt of over $250,000 from the at-issue account. Wang, as

14

a named defendant, possesses personal knowledge related to those funds that would be directly relevant. While Wang may wish to narrow the "core issues of the case" to "contract terms and currency exchange," she has not convinced us the trial court erred in considering all causes of action and related allegations to find Wang a necessary witness.

Wang next faults the trial court for not "not[ing] any specific prejudice or harm that Zhao would suffer" if Wang were to testify. But the court was not required to find any prejudice to Zhao given its finding of potential confusion to the jury and the resulting "prejudice to the system." (See Rule 3.7, com. 3 ["to protect the trier of fact from being misled *or* the opposing party from being prejudiced," italics added].) Although Wang asserts "her testimony would not be confusing to the jury," she fails to explain why. Without supporting argument or legal authority, this bare assertion is forfeited. (*Champion*, 58 Cal.4th at p. 986.)

By expressly finding Wang would necessarily be a witness and her testimony would risk confusing the jury, the court impliedly considered and rejected the possibility that Zhao brought the motion for purely tactical reasons.

We thus conclude the court did not abuse its discretion in disqualifying Wang under the advocate-witness rule.

b.

Wang argues the disqualification order was "excessively overbroad and unsupported by Rule 3.7" because it precludes her from representing Sun "through all phases of litigation." Zhao claims the "categorical disqualification was necessary to effectuate Rule 3.7(a)'s purpose of avoiding jury confusion." Although we affirm the trial court's decision to disqualify

15

Wang under the advocate-witness rule, we agree the court erred in extending her disqualification to the entire litigation without explanation.

"Rule 3.7 is limited on its face to trial." (*Lopez*, 81 Cal.App.5th at p. 423.) It prohibits a lawyer from acting as an advocate "in a trial" in which the lawyer is likely to be a witness. (Rule 3.7(a).) "Nevertheless, to effectuate the rule's purpose of avoiding fact finder confusion," courts have interpreted it to preclude the advocate-witness from participating in "any pretrial activities [that] carry the risk of revealing the attorney's dual role to the jury," including pretrial evidentiary hearings and the taking or defending of depositions. (*Yim*, 55 Cal.App.5th at p. 583 [cleaned up].) *Lopez* held it was an abuse of discretion to use the advocate-witness rule to categorically disqualify an attorney from all phases of the litigation, "including behind-the-scenes activities unlikely to pose any risk of fact finder confusion," without finding how such an extension would further the advocate-witness rule's purpose. (*Lopez*, at pp. 425-426.)

In this respect, *Lopez* bears a striking resemblance to the case before us. The trial court appears to have disqualified Wang from representing Sun in all phases of the litigation. But the court did not explain why the advocate-witness rule warranted such broad disqualification. Extending Wang's disqualification to all pretrial activities without explanation constitutes an abuse of discretion.

Accordingly, we reverse in part the trial court's disqualification order and remand with directions as specified in the disposition below.

2.

Zhao contends the trial court "properly disqualified Wang *and* Kingswood Law from representing Sun under the advocate-witness rule." (Italics added.) Wang counters that disqualifying Kingswood Law was

improper "absent a showing that the conflict permeates the entire firm." We discern no basis for extending the disqualification to the entire firm.

The trial court disqualified both Wang and Kingswood Law based on Wang's dual role as an advocate and a witness. But Rule 3.7 does not by itself justify vicariously disqualifying all other lawyers at the advocate-witness's law firm. (*Wu v. O'Gara Coach Co., LLC* (2019) 38 Cal.App.5th 1069, 1084.) To the contrary, the advocate-witness rule expressly permits a lawyer to serve as an advocate "in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by rule 1.7 or rule 1.9." (Rule 3.7(b).) Rules 1.7 and 1.9 address conflicts of interest with current and former clients, which were not found here. As a result, the order offers no reason for disqualifying Kingswood Law. We therefore reverse that aspect of the disqualification order.

III.

We affirm the denial of Wang's anti-SLAPP motion.

As for the disqualification order, we (1) reverse the trial court's order in full as to Kingswood Law and partially insofar as it disqualifies Wang from representing Sun in all pretrial activities and (2) remand with directions for the trial court to modify the scope of the disqualification order to provide that Wang is disqualified from representing Sun only at trial and during any other pretrial activities that the court determines pose a risk of revealing Wang's dual role to the jury. We affirm the disqualification order in all other respects.

17

The parties shall bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a).)

CASTILLO, J.

WE CONCUR:

DO, Acting P. J.

BUCHANAN, J.